UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY J. BRIGGS,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>SAN DIEGO UNIFIED PORT DISTRICT; and DOES 1 through 100,<br><br>　　　　　　　　Defendants. | Case No.: 24-cv-239-DMS-VET<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)** |

Pending before the Court is Defendant San Diego Unified Port District's ("SDUPD") motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Defendant's Motion, ECF No. 5). Plaintiff filed a response in opposition on August 30, 2024. (Plaintiff's Opposition, ECF No. 8). Defendant SDUPD filed its reply on September 13, 2024. (Defendant's Reply, ECF No. 9). The Court found this matter to be suitable for resolution without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 10). For the following reasons, the Court grants Defendant's motion to dismiss on 12(b)(1) grounds and dismisses Plaintiff's Complaint without prejudice.

### I.　　BACKGROUND

On October 10, 2023, the governing board of the SDUPD held a public meeting regarding whether to censure Commissioner Sandy Naranjo, one of Defendant's board

members. (Complaint ¶ 9). Commissioner Naranjo had retained Plaintiff Cory J. Briggs as her attorney and Plaintiff attended the meeting to represent her interests. (*Id.*). During the meeting's public comment portion, Plaintiff read aloud a letter written by Andrew McKercher, the former spouse of Sandy Naranjo. (*Id.* at 3, 7). The contents of the letter provided an alternative hypothesis to the motivation behind the Board's censorship of Ms. Naranjo—namely allegations of how Ms. Naranjo suspected that SDUPD's top attorney was acting illegally and unethically and how Rebecca Harrington, the assistant to that attorney, said that "she hates [Ms. Naranjo] and that the Port Commissioners all hate [Ms. Naranjo] and that '[Ms. Naranjo] is going down.'" (*Id.* at 7). The SDUPD board then voted to censure Plaintiff's client. (*Id.* ¶ 11). After the meeting, Plaintiff shared his opinions to the press about the board's censuring of his client and the alleged deficiencies in the documents underlying the censorship. (*Id.* ¶ 13).

Following Plaintiff's appearance at the SDUPD public meeting, the SDUPD opened a "workplace investigation" into Plaintiff due to complaints made by Ms. Harrington against Plaintiff. (*Id.* at 14). On February 1, 2024, Plaintiff received an email from Karen Carrera, an "outside neutral investigator retained to look into [Ms. Harrington's] allegations." (*Id.* at 14, 412–16). During this email exchange, Ms. Carrera asked if she could "talk to [Plaintiff] for a few minutes" and if Plaintiff could "respond to a few questions." (*Id.* at 413). Ms. Carrera also said that she "just need[s] to do [her] job and get [Plaintiff's] side of things." (*Id.*). Plaintiff's Complaint does not indicate whether Plaintiff actually spoke with Ms. Carrera.

Plaintiff further alleges that he "has never been an employee, independent contractor, or other agent of the [SDUPD]." (*Id.* ¶ 17). He also alleges that Defendant had "no regulatory or other jurisdiction over [Plaintiff]" and no lawful or legal authority to 'investigate' Plaintiff. (*Id.*). From Defendant's investigation, Plaintiff claims that his speech has been chilled "for fear of being further targeted by the wrongdoing by Defendants and other government agencies and officials." (*Id.* ¶ 20). Plaintiff also claims Defendant retaliated against him by "requiring him to divert his attention from

compensable work for his clients in order to participate in the 'investigation,' . . . forcing him to retain legal counsel to defend himself in the 'investigation,' . . . bringing him disrepute in the community, and . . . providing a subterfuge for taking other future punitive measures against [Plaintiff]." (*Id.* ¶ 18).

### A. Claims

On June 17, 2024, the Court held a status conference regarding Defendant's intent to file a motion to dismiss under Rule 12(b)(6). At that conference, the parties agreed that Plaintiff's Complaint does not allege a state law claim under Cal. Civ. Code § 47 and that Defendant's motion need only address arguments pertaining to 42 U.S.C. § 1983. (ECF No. 4). Accordingly, the Court **DISMISSES** Plaintiff's Cal. Civ. Code § 47 claim without prejudice. The remaining claim is therefore based on 42 U.S.C. § 1983 for violation of Plaintiff's First Amendment rights to freedom of expression, association, and speech. (Complaint ¶ 19).

## II.     LEGAL STANDARD

Under Federal Rules of Civil Procedure 12(b)(1), a party may file a motion to dismiss on the grounds that the Court "lack[s] . . . subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). For Plaintiff to have Article III standing, he "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1142 (9th Cir. 2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "If 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" *TransUnion LLC*, 594 U.S. at 423 (quoting *Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)). "[W]hen standing is challenged on the basis of the pleadings, [a court] accept[s] as true all material allegations of the complaint, and . . . construe[s] the complaint in favor of the complaining party." *Thomas v. Cnty. of Humboldt, Ca.*, No. 23-

15847, 2024 WL 5243033, at *4 (9th Cir. Dec. 30, 2024) (quoting *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988)).

## III.   DISCUSSION

### A. Constitutional Ripeness

#### 1. Legal Standard

Along with standing and mootness, ripeness is one of three justiciability requirements. Ripeness "is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 944 (9th Cir. 2021) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 528 U.S. 803, 808 (2003)). "The 'basic rationale' of the ripeness requirement is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).

The Ninth Circuit has "separated out the constitutional and prudential components of ripeness." *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022). "[T]he constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003)). "Whether framed as an issue of standing or ripeness, an injury must involve 'an invasion of a legally protected interest that is (a) concrete and particularized[,] and (b) actual or imminent, not conjectural or hypothetical.'" *Twitter*, 56 F.4th at 1173 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Although the requirements of ripeness and standing are applied "less stringently in the context of First Amendment claims," a plaintiff may not simply "bring a First Amendment claim 'by nakedly asserting that his or her speech was chilled.'" *Id.* at 1173–74 (first quoting *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010); and then quoting *Getman*, 328 F.3d at 1095).

The First Amendment protects individuals from both before-the-fact "pre-enforcement" challenges and after-the-fact "retaliatory actions" by state officials against

protected speech. *Id.* at 1174. "Pre-enforcement challenges to speech regulations and retaliation claims . . . carry different requirements for standing." *Id.* Factors for determining whether a pre-enforcement claim is constitutionally ripe include: "(1) 'whether the plaintiffs have articulated a concrete plan to violate the law in question,' (2) 'whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings,' and (3) 'the history of past prosecution or enforcement under the challenged statute.'" *Id.* (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (internal quotations omitted)). Additionally, "[t]he potential plaintiff must have an 'actual or well-founded fear that the law will be enforced against'" him. *Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 851 (9th Cir. 2007) (quoting *Getman*, 328 F.3d at 1095). For an after-the-fact retaliation claim, a court considers "the three elements that form the 'irreducible constitutional minimum' of Article III standing. To establish standing in a First Amendment retaliation case, a plaintiff must show '(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Twitter*, 56 F.4th at 1174 (first quoting *Lujan*, 504 U.S. at 560; and then quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (cleaned up)).

Before applying either standard, the Court must first determine whether Plaintiff's First Amendment claims are pre-enforcement claims or retaliation claims. Plaintiff appears to argue that his Complaint alleges a pre-enforcement claim because the act of "a large and influential government agency like the [SDUPD] to initiate an open-ended investigation of a private citizen – particularly against an attorney who has appeared before and litigated against the Port in the past – for participating in the public process would chill or silence a person of ordinary firmness from future First Amendment activities before the [SDUPD]." Plaintiff's Opposition, at 13; *see also* Complaint ¶ 20 ("[Plaintiff] has suffered a legally cognizable injury . . . [that] will further 'chill' his speech for fear of being further targeted by the wrongdoing by Defendants and other government agencies and officials.").

Defendant disagrees, arguing that Plaintiff instead attempts to bring a retaliation First Amendment claim. (Defendant's Reply, at 6 n.2).

The Ninth Circuit's decision in *Twitter, Inc. v. Paxton* is instructive. In *Twitter*, the plaintiff brought a § 1983 First Amendment claim after the Attorney General of Texas initiated a Civil Investigative Demand ("CID") following the plaintiff's content-moderation decisions. *Twitter*, 56 F.4th at 1172. The Ninth Circuit found that the plaintiff was not bringing a pre-enforcement claim because (1) "[the plaintiff] [did] not allege that its speech is being chilled by a statute of general and prospective applicability that may be enforced against it"; (2) [the plaintiff] alleges that [defendant] targeted it specifically with the CID and related investigation"; and (3) "[the plaintiff] claims [defendant] has already acted against it." *Id.* at 1174–75.

The Court agrees with Defendant that Plaintiff is actually bringing retaliatory First Amendment claims. First, Plaintiff is not challenging a statute of general and prospective applicability that may be enforced against him. Plaintiff does not identify any statute to challenge, noting instead that "[t]here is no lawful basis for [Defendant] to 'investigate' [Plaintiff]." (Complaint ¶ 17). Second, Plaintiff alleges that Defendant specifically targeted Plaintiff with the investigation because the investigation "was in retaliation for the statements he read from the letter." (Complaint ¶ 18). Third, Plaintiff alleges that Defendant has already acted against him. (Complaint ¶ 14). While Plaintiff appears to allege both after-the-fact retaliatory harm and before-the-fact pre-enforcement harm, the Ninth Circuit and other district courts have found the former to prevail over the latter when the above considerations are present. *See Twitter*, 56 F.4th at 1175 (applying retaliatory framework to constitutional ripeness question where "the subject of [plaintiff's] challenge is not only some anticipated future enforcement action by [defendant]; [plaintiff] claims [defendant] has already acted against it"); *U.S. News & World Rep., L.P. v. Chiu*, No. 24-cv-00395-WHO, 2024 WL 2031635, at *7 (N.D. Cal. May 7, 2024) (finding that although plaintiff "challenges both anticipated enforcement action that [Defendant] has yet to undertake *and* the [after-the-fact alleged retaliatory actions], . . . [t]he nature of [plaintiff's]

claims calls for evaluation of ripeness under a First Amendment retaliatory framework"). Accordingly, the Court finds that the retaliatory framework governs its analysis of Plaintiff's First Amendment claims.

### 2. Plaintiff Briggs Has Not Shown Concrete Injury-In-Fact

To establish standing in a First Amendment retaliation case, a plaintiff must show '(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Twitter*, 56 F.4th at 1174 (quoting *Driehaus*, 573 U.S. at 157–58 (cleaned up)). For First Amendment claims, "'the injury-in-fact element is commonly satisfied by a sufficient showing of self-censorship, which occurs when a claimant is chilled from exercising his right to free expression.'" *Twitter*, 56 F.4th at 1174 (quoting *Edgar v. Haines*, 2 F.4th 298, 310 (4th Cir. 2021)).

Plaintiff argues that Defendant's investigation "will further 'chill' his speech for fear of being further targeted by the wrongdoing by Defendants and other government agencies and officials." (Complaint ¶ 20). Plaintiff also argues for the first time in opposition brief that Defendant's initiation of "an open-ended investigation of a private citizen – particularly against an attorney who has appeared before and litigated against the [SDUPD] in the past – for participating in the public process would chill or silence a person of ordinary firmness from future First Amendment activities before the Port." (Plaintiff's Opposition, 12–13). Plaintiff alleges that Defendant's ongoing investigation "was intended to retaliate against [Plaintiff] by, among other things, (*i*) requiring him to divert his attention from compensable work for his clients in order to participate in the 'investigation,' (*ii*) forcing him to retain legal counsel to defend himself in the 'investigation,' (*iii*) bringing him into disrepute in the community, and (*iv*) providing a subterfuge for taking other future punitive measures against [Plaintiff]."

Plaintiff's Complaint, taken as true, does not sufficiently allege any chilling effect on his speech. "A concrete injury need not be tangible but 'must actually exist.'" *Twitter*, 56 F.4th at 1175 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Plaintiff does

not specify whether he had actually suffered these burdens and did not include any declarations or affidavits to support the existence of those alleged burdens. Rather, Plaintiff's claim that "[his] speech has been chilled is 'a bare legal conclusion' upon which [he] cannot rely to assert injury-in-fact." *Id.* at 1175 (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011)).

Additionally, Plaintiff has not suffered an Article III injury because the investigation inquiry itself appears to not be self-enforcing. *See Twitter*, 56 F.4th at 1176. In *Twitter*, the Ninth Circuit noted that for the Texas Attorney General to "enforce" the CID, it still had to "serve the recipient with the petition, the state court can conduct hearings to determine whether to order enforcement, and the recipient may appeal to the Texas Supreme Court." *Id.* In light of these procedural safeguards, the Ninth Circuit concluded that "to complain about the CID in this posture is to speculate about injuries that have not and may never occur. And to the extent [Plaintiff] argues that any actions it has taken in response to the CID create an Article III injury, those injuries are self-inflicted because the actions were voluntary." *Id.*

Plaintiff does not allege that the investigation is self-enforcing and does not suggest that he would be deprived of procedural safeguards should Defendants try to enforce compliance with the investigation. Rather, Plaintiff alleges that there was a "credible threat of enforcement" because "Ms. Carrera stated that she was investigating a complaint against Plaintiff." (Defendant's Opposition, at 13). However, Plaintiff alleges, and Defendant agrees, that Defendant has "no legal authority to 'investigate' [Plaintiff]." Complaint ¶ 17; Motion, at 20 ("[Plaintiff] admits (and the District agrees) that the District has no jurisdiction over him."). Any harm Plaintiff may have suffered to defend himself against this investigation is thus "self-inflicted because [his] actions were voluntary." *Twitter*, 56 F.4th at 1176.

Accordingly, the Court finds that Plaintiff has not sufficiently alleged a concrete injury-in-fact and does not have standing.[1]

**B. Prudential Ripeness**

1. Legal Standard

Plaintiff's case must also be prudentially ripe for this Court to have jurisdiction. "To assess prudential ripeness, [a court] must 'evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Ass'n of Irritated Residents v. E.P.A.*, 10 F.4th 937, 944 (9th Cir. 2021) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)). "The prudential considerations of ripeness are amplified where constitutional issues are concerned." *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002).

2. Fitness for Judicial Decision

A claim is fit for judicial decision "if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 752 (9th Cir. 2020) (quoting *Stormans, Inc. v. Selecky*, 585 F.3d 1109, 1126 (9th Cir. 2009)). In the Ninth Circuit, "[r]elevant considerations include 'whether the administrative action is a definitive statement of an agency's position; whether the action has a direct and immediate effect on the complaining parties; whether the action has the status of law; and whether the action requires immediate compliance with its terms.'" *Id.* (quoting *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 780 (9th Cir. 2000)).

All four considerations counsel against finding this matter fit for judicial decision. First, Defendant SDUPD's investigation is not a definitive statement of the SDUPD's position and is not final because the "[investigation itself] do[es] not 'impose an obligation,

---

[1] Because Plaintiff must show all three elements of constitutional standing and has failed to allege concrete injury-in-fact, the Court declines to rule on whether Plaintiff has sufficiently alleged causality and redressability.

deny a right, or fix some legal relationship as a consummation of the administrative process." *Ass'n of Am. Med. Colls.*, 217 F.3d at 780–81 (quoting *Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 113 (1948)). "An investigation, even one conducted with an eye to enforcement, is quintessentially non-final as a form of agency action." *Id.* at 781. Second, although Plaintiff claims a bevy of burdens due to Defendant's investigation inquiry, this immediate effect on Plaintiff was on his own volition and was not required by the inquiry. *C.f. Skyline Wesleyan Church*, 968 F.3d at 752 ("[S]uch immediate compliance [by Plaintiff] was required by the terms of the [agency's] Letters."). Third, the parties agree that Defendant has no authority to investigate Plaintiff. Fourth, the inquiry did not require, and Defendant had no authority to require, immediate compliance with its terms. Indeed, Plaintiff appears to have ignored Ms. Carrera after his initial email exchange with her. Accordingly, the Court finds that this case is not fit for judicial decision.

### 3. Balance of Hardships

"To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss." *US W. Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999). A court "consider[s] whether the 'regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance.'" *Stormans, Inc.*, 586 F.3d 1109, 1126 (quoting *Ass'n of Am. Med. Colls.*, 217 F.3d at 783).

As previously discussed, Defendant's investigation inquiry is not self-enforcing and Defendant appears to have no authority to penalize Plaintiff for noncompliance. The alleged additional costs and burdens incurred by Plaintiff to participate in the investigation were not required by the investigation inquiry. Accordingly, the Court finds that Plaintiff does not meet the hardship requirement.

## IV.   CONCLUSION

The Court finds that Plaintiff lacks both constitutional and prudential ripeness for the Court to have subject-matter jurisdiction over this matter.  Accordingly, the Court **GRANTS** Defendant's motion to dismiss on 12(b)(1) grounds and Plaintiff's remaining claims are **DISMISSED** without prejudice.[2]  Plaintiff may file an amended complaint within **fourteen (14) days** of the entry of this order.

Dated: January 21, 2025

Hon. Dana M. Sabraw, Chief Judge
United States District Court

---

[2] Because the Court dismisses this case on these grounds, the Court declines to address Defendant's Eleventh Amendment immunity, 12(b)(6), and Rule 8 arguments.